NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**VERONICA MAE FAULKNER,**

        **Plaintiff,**

**v.**                                **Case No. 6:16-CV-260-ORL-28KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the Complaint filed by Plaintiff, Veronica Mae Faulkner, seeking review of the final decision of the Commissioner of Social Security denying her claim for social security benefits, Doc. No. 1, the answer and certified copy of the record before the Social Security Administration ("SSA"), Doc. Nos. 11, 13, and the parties' Joint Memorandum,[1] Doc. No. 15.

## PROCEDURAL HISTORY.

In 2012, Faulkner filed an application for benefits under the Supplemental Security Income for the Aged, Blind and Disabled Program ("SSI"), 42 U.S.C. § 1381, *et seq*. She alleged that she became disabled on August 16, 2012. R. 171-81.

---

[1] I required counsel for the parties to submit a single, Joint Memorandum with an agreed statement of the pertinent facts in the record. Doc. No. 14. Counsel for Plaintiff was ordered to identify and frame, in a neutral fashion, each of the disputed issues raised as grounds for reversal and/or remand, and counsel for the Commissioner was required to respond to each of those issues in the format set forth in the Scheduling Order. *Id.* at 4.

NOT FOR PUBLICATION

After her application was denied originally and on reconsideration, Faulkner asked for a hearing before an Administrative Law Judge ("ALJ").  R. 121-22.  An ALJ held a hearing on April 17, 2014.  Faulkner, accompanied by an attorney, and a vocational expert ("VE") testified at the hearing.  R. 31-56.

After considering the hearing testimony and the evidence in the record, the ALJ found that Faulkner had not engaged in substantial gainful activity since September 5, 2012, the application date.  R. 18.  The ALJ found that Faulkner suffered from the medically determinable impairments of hypertension and a mood disorder, but that neither of these impairments was severe.  R. 18, 24.  Nevertheless, the ALJ made the following residual functional capacity ("RFC") finding:

> [Faulkner] is able to perform simple, rote and repetitive tasks in response to oral directives.  She needs work tasks that do not change from day to day.  She may have occasional or less interaction with coworkers and supervisors.  She should not have any production goals or quotas. She should work with things rather than with people.

R. 19.   In reaching this assessment, the ALJ found that Faulkner's reports of functional limitations were not entirely credible.  R. 20.

Faulkner had no past relevant work.  R. 52.  During the hearing, the ALJ asked the VE the following question:

> The claimant has no past relevant work, so the only kind of work she would be able to do would be unskilled types of work.  I find that she can do a relatively full range of medium work as that's defined under the regulations.  She does have non-exertional limitations, which will not allow her to do more than simple competitive tasks in response to oral directives, that she should work in a work environment [in] which the work tasks do not change materially from one day to the next . . . . Probably keep her away from having to deal with members of the general public, but she is able to have occasional or less interaction with coworkers and supervisors, no production goals or quotas. She would probably do better having jobs that require her to work with things as opposed to people.

NOT FOR PUBLICATION

R. 52-53. The VE testified that this person could perform the medium, unskilled jobs of hand packer and kitchen helper and the light unskilled jobs of laundry folder and photocopy machine operator, all of which were available in the national economy. R. 53-54. The VE confirmed that each of these jobs are "simple, rote, and repetitive in nature with tasks that are relatively fixed and don't change materially from one day to the next[.]" R. 54.

Based on the testimony of the VE, the ALJ found that assuming Faulkner "were somehow limited to medium unskilled work," she could perform the jobs identified by the VE. R. 24. Therefore, the ALJ concluded that Faulkner was not disabled. *Id.*

Faulkner sought review of the ALJ's decision by the Appeals Council. R. 7. On January 15, 2016, the Appeals Council found no reason to review the ALJ's decision. R. 1-3.

Faulkner now seeks review of the final decision of the Commissioner by this Court.

## JURISDICTION AND STANDARD OF REVIEW.

Faulkner having exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3). A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## SUMMARY OF THE FACTS.

After a thorough review of the record, I find that the parties have generally adequately summarized the facts in their Joint Memorandum, which statement of facts I incorporate by

NOT FOR PUBLICATION

reference. Accordingly, I will only summarize facts relevant to the issues raised to protect Faulkner's privacy to the extent possible.

Faulkner was both in 1961. She completed school through the eleventh grade and she failed the GED test. R. 36-37. During the ALJ's hearing, Faulkner testified that she had difficulty remembering things and communicating with people. R. 41.

The medical records show that before the alleged disability onset date, Faulkner had been diagnosed by Lynval Parke, ARNP, with bipolar disorder with a global assessment of functioning ("GAF") score of 50.[2] R. 252. On July 3, 2012, ARNP Parke observed that Faulkner had a euthymic mood, normal affect with intact memory and good attention and concentration. ARNP Parke assessed Faulkner's GAF score to be 55.[3] R. 260. On January 29, 2013, Faulkner returned to ARNP Parke for medication renewal. She had no complaints, and ARNP Parke's mental status evaluation showed normal results. R. 283-85. ARNP Parke assessed her GAF score to be 55. R. 285.

J. Jeff Oatley, Ph.D., examined Faulkner on October 31, 2012 at the request of the Office of Disability Determinations. Faulkner reported experiencing memory problems. R. 274. Dr. Oatley administered psychological tests. R. 276-77. Dr. Oatley opined that Faulkner's memory was consistent with lower intellectual functioning, her attention span was appropriate and her

---

[2] A GAF score of 41–50 indicates: "**Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **or any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job). DSM–IV at 32 (emphasis in original)." *Norris v. Astrue*, No. 11-G-3154-E, 2012 WL 2577529, at *3 (N.D. Ala. June 28, 2012) (quoting *Diagnostic & Statistical Manual of Mental Disorders*, 32 (4th Ed.) ("DSM-IV").

[3] A GAF score of 51-60 reflects moderate symptoms or moderate difficulty in social, occupational, or school functioning. *Owen v. Astrue*, No. 11-G-1672-NE, 2012 WL 2577520, at *4 n. 1 (N.D. Ala. June 28, 2012) (quoting DSM-IV).

attitude was pleasant. The only functional capacity opinion Dr. Oatley gave was that Faulkner would need assistance managing her finances because she had to use her fingers to correctly compute very simple mental purchases. R. 276.

Theodore Weber, Ph.D., and Kevin Ragsdale, Ph.D., prepared mental functional capacity assessments based on review of Faulkner's records in November and December 2012 respectively. Each of these psychologists found that Faulkner had borderline intellectual function and affective disorders, which were severe. R. 81, 93. Each of these psychologists opined that Faulkner's mental impairments caused moderate difficulties in social functioning and in concentration, persistence or pace. R. 84-85, 96-97. Each of them agreed that Faulkner would be capable of completing simple tasks on a regular basis, but noted that this was "likely a borderline ability[.]" R. 85-86, 98.

## ANALYSIS.

In the Joint Memorandum, which I have reviewed, Faulkner raises three interrelated assignments of error. She contends that the ALJ erred in finding, at step two of the sequential analysis, that she had no severe mental impairment. She submits that this error resulted in the ALJ not properly considering the opinion of Dr. Oatley, an examining psychologist, and the opinions of Dr. Weber and Dr. Ragsdale, who opined that she had severe mental impairments. Finally, she argues that the error at step two also undermines the ALJ's credibility finding. She asks that the final decision of the Commissioner be reversed and the case remanded for further proceedings. These are the only issues I will address.

> Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work,

5

> irrespective of age, education or work experience. Claimant need only show that her impairment is not so slight and its effect is not so minimal.

*McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). Counsel for the Commissioner correctly concedes that the ALJ's finding at step two that Faulkner did not have severe impairments is inconsistent with the nonexertional limitations in his RFC assessment. Doc. No. 15, at 12. Counsel argues, however, that this error was harmless at best because the ALJ continued his analysis through the remaining steps of the sequential evaluation and, therefore, Faulkner was not prejudiced by the step two error. *Id.* at 12-13.

The only argument counsel for Faulkner asserts about the ALJ's consideration of the opinions of Dr. Oatley, Dr. Weber and Dr. Ragsdale is that he did not adopt their conclusions that Faulkner had severe impairments. He does not address, however, how the ALJ's findings regarding the weight to give to these psychologist's opinions are undermined by the failure to find that Faulkner's mental impairment was severe. The ALJ incorporated mental functional limitations identified by Dr. Weber and Dr. Ragsdale in the RFC assessment by limiting her RFC to simple, rote and repetitive tasks that do not change from day to day and only occasional or less interaction with coworkers and supervisors.

As for the credibility argument, counsel for Faulkner asserts that because the ALJ failed to apply the correct legal standards to the opinions of Drs. Oatley, Weber and Ragsdale, he did not adequately consider all of the evidence in making the credibility finding. This conclusory argument is insufficient, in my view, to undermine the ALJ's credibility conclusion. Indeed, the ALJ articulated specific and adequate reasons, supported by substantial evidence in the record, to support his credibility finding. *See* R. 22-23. This is all that the law requires. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995).

The Eleventh Circuit has found an error at step two of the sequential evaluation to be harmless when, as here, the ALJ considered the symptoms and limitations that would result from a mental impairment during later stages of the sequential evaluation.  *See, e.g., Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 859 (11th Cir. 2013).[4]  The ALJ's determination of Faulkner's RFC is not specifically challenged, and it is supported by substantial evidence in the record.   Therefore, I recommend that the Court find that the step two error is harmless, at best.

## RECOMMENDATION.

For the reasons stated above, I **RESPECTFULLY RECOMMEND** that the final decision of the Commissioner be **AFFIRMED**.   I further **RECOMMEND** that the Court direct the Clerk of Court to issue a judgment consistent with its decision on this Report and Recommendation and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully Recommended** this 15th day of November 2016.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

---

[4] Unpublished decisions of the Eleventh Circuit are cited as persuasive authority.